UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID C. LOUDERMILK, *et al.*<br><br>　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>FCA US, LLC, *et al.*,<br><br>　　　　　　　　　Defendants. | Case No. 5:24-cv-02261-CV (SHKx)<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO REMAND**<br>**[DOC. # 15]** |

On November 22, 2024, Plaintiffs David C. Loudermilk and Jolene M. Loudermilk (collectively, "Plaintiffs") filed a Motion to Remand ("Motion"). Doc. # 15. On December 18, 2024, Defendant FCA US, LLC ("Defendant") filed an opposition to the Motion. Doc. # 18 ("Opp."). On December 24, 2024, Plaintiffs filed a reply brief. Doc. # 19.

On February 6, 2025, the Court issued its reassignment order, which vacated the hearing date for this Motion. Doc. # 29. The Court now finds that oral argument is not necessary to resolve the Motion. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L. Civ. R. 7-15; *Willis v. Pac. Mar. Ass'n*, 244 F.3d 675, 684 n. 2 (9th Cir. 2001). Having considered the briefing, the Court DENIES the Motion.

## I. BACKGROUND

Plaintiffs filed their Complaint in San Bernardino County Superior Court on September 10, 2024. Doc. # 1-1 ("Compl."). Plaintiffs alleged that, on or about August 13, 2016, they entered into a warranty contract with Defendant regarding a 2016 Ram 1500 vehicle. Compl. ¶ 7. The Complaint asserts four causes of action: three for different violations of California's Song-Beverly Consumer Warranty Act ("Song-Beverly Act") and a cause of action for breach of the implied warranty of merchantability pursuant to sections 1791.1, 1794, and 1795.5 of the California Civil Code. *Id.* ¶¶ 34–52. Plaintiffs seek damages, restitution, a civil penalty in the amount of two times Plaintiff's actual damages, prejudgment interest, attorney fees and costs, and other relief that the Court deems proper. *Id.* at Prayer for Relief.

On October 23, 2024, Defendant filed a Notice of Removal, invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. Doc. # 1 ¶ 12. Plaintiff now moves to remand this action back to state court. *See generally* Doc. # 15; Memorandum of Points and Authorities in Support of Plaintiffs' Motion, Doc. # 15-1 ("Mot.").

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute . . . It is to be presumed that a cause lies outside this limited jurisdiction . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). A defendant may remove an action from state court to federal court only if the federal court has subject matter jurisdiction over the action. 28 U.S.C. § 1441(a). Under 28 U.S.C. § 1332(a), a federal court has subject matter jurisdiction when (1) the dispute is between "citizens of different States," and (2) the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs."

//
//

III. **DISCUSSION**

Plaintiffs do not dispute that complete diversity between the parties exists, and thus the Court considers that requirement satisfied. *See Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1228 (9th Cir. 2019) ("[W]hen a defendant's allegations of citizenship are unchallenged, nothing more is required"). However, Plaintiffs argue that the Court lacks subject matter jurisdiction because Defendant has not sufficiently shown that the amount in controversy exceeds $75,000. *See* Mot. at 10–24.[1]

In determining the amount in controversy, courts first look to whether the complaint alleges on its face "damages in excess of the required jurisdictional minimum." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 402 (9th Cir. 1996). If the complaint alleges on its face damages that equal or exceed $75,000, the amount pled controls unless it appears to a "legal certainty" that the claim is for less than $75,000. *Id.* at 401–404. However, if the amount pled is "unclear or ambiguous" or is less than $75,000, "the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 793 (9th Cir. 2018) (citing *Urbino v. Orkin Servs. of California, Inc.*, 726 F.3d 1118, 1122 (9th Cir. 2013)).

"The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [the] defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). Accordingly, in assessing the amount in controversy, a court must "assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (citation modified). At the same time, "a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). Courts

---

[1] All record citations in this Order reflect CM/ECF pagination.

strictly construe the removal statutes, rejecting removal jurisdiction in favor of remand to the state court if any doubt as to the right of removal exist. *Martinez v. Am.'s Wholesale Lender*, 764 F. App'x 592 (9th Cir. 2019) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

Here, the Complaint alleges damages "in an amount that is not less than $35,001" and is thus ambiguous as to whether the amount in controversy exceeds $75,000. Compl. ¶ 21. Although Defendant asserts that $35,001 should be read as a "floor, not a cap," that argument, even if correct, does not establish that the Complaint alleges on its face damages exceeding the jurisdictional threshold. *See* Opp. at 4–5. Accordingly, Defendant must establish by a preponderance of the evidence that the amount in controversy exceeds $75,000.

Defendant argues that it has met this burden. *See id.* at 3–4. First, Defendant points to the Manufacturers Suggested Retail Price ("MSRP") of Plaintiff's subject vehicle of $35,340 as representing Plaintiff's potential actual damages. *Id.* at 3. Second, Defendant asserts that the Complaint alleges civil penalties that could potentially amount to an additional $70,680, or two times the number of actual damages. *Id.* Third, Defendant estimates that Plaintiff could be awarded approximately $25,000 in attorney fees. Combined, the potential actual damages, civil penalties, and attorney fees exceed the $75,000 threshold. *Id.* at 3–4.

In contrast, Plaintiffs argue that Defendant's asserted potential actual damages of $35,340 is speculative because Defendant failed to consider "essential facts about the purchase price and use" of the vehicle. Mot. at 9 (emphasis omitted). Such essential facts include whether Plaintiff had made any installment payments on the vehicle or whether Defendant accounted for the "mileage offset"—or the "amount directly attributable to use by the buyer prior to the discovery of the nonconformity"—which needs to be subtracted from the purchase price to calculate actual damages under the Song-Beverly Act. *Id.* at 13–18. Plaintiffs also assert that Defendant cannot simply assume civil penalties are included in the amount in controversy without pointing to specific facts in the Complaint

or other evidence showing that such penalties are appropriate. *Id.* at 18–21. Finally, Plaintiffs argue that Defendant's calculation of potential attorney fees is purely speculative and should not be considered. *Id.* at 21–24.

These three disputed categories of damages—actual damages, civil penalties, and attorney fees—are analyzed in greater detail below.

### A.   Actual Damages

Under the Song-Beverly Act, if a vehicle manufacturer is unable to "conform [the vehicle] to the applicable express warranties after a reasonable number of attempts," the manufacturer must either "promptly replace the new motor vehicle" or "promptly make restitution to the buyer." Cal. Civ. Code § 1793.2(d). Restitution is measured by the "amount equal to the actual price paid or payable [for the vehicle] by the buyer," less the reduction in value to the vehicle "directly attributable to use by the buyer prior to the time the buyer first delivered the vehicle to the manufacturer or distributor . . . for correction of the problem that gave rise to the nonconformity." Cal. Civ. Code § 1793.2(d)(2)(B)–(C). The calculation of restitution also excludes "nonmanufacturer items installed by a dealer or the buyer." *Id.*; *see also Alvarado v. FCA US, LLC*, Case No. 5:17-cv-00505-JGB (DTBx), 2017 WL 2495495, at *4 (C.D. Cal. Jun. 8, 2017).

In calculating restitution under the Song-Beverly Act, the starting point is to determine the "actual price paid or payable [for the vehicle] by the buyer[.]" Cal. Civ. Code § 1793.2(d). If a plaintiff has been paying for the vehicle in installments, only the installments actually paid would be included in the amount. *See Salazar v. Ford Motor Co.*, No. 2:21-CV-06756-FLA (JPRx), 2022 WL 16855563, at *2 (C.D. Cal. Nov. 10, 2022). However, if the record does not show whether a plaintiff has made all installment payments for the amount financed, courts have found that the total "cash price" listed in a Retail Installment Sale Contract is a reasonable estimate of "the actual price paid or payable." *See id.*; *Stupin v. Gen. Motors LLC*, No. 2:23-cv-06943-SVW (MAAx), 2024 WL 811706, at *3 (C.D. Cal. Feb. 27, 2024); *Messih v. Mercedes-Benz USA, LLC*, Case

No. 3:21-cv-03032-WHO, 2021 WL 2588977, at *4 (N.D. Cal. June 24, 2021) (collecting cases).

Once the actual price paid or payable has been established, the next step in calculating restitution is to reduce the cash price by a "mileage offset," which accounts for the vehicle's reduction in value attributable to use by the plaintiff prior to the first repair or attempted repair, as required by Cal. Civ. Code § 1793.2(d)(2)(C). *See Messih*, 2021 WL 2588977, at *5. The mileage offset is determined by multiplying the "actual price of the new motor vehicle paid or payable by the buyer . . . by a fraction having as its denominator 120,000 and having as its numerator the number of miles traveled by the new motor vehicle prior to the time the buyer delivered the vehicle" for correction of the defect. Cal. Civ. Code § 1793.2(d)(2)(C). However, courts in this district are split as to whether defendants must submit evidence of the mileage offset to establish the amount in controversy at the motion to remand stage. *Compare Tucker v. FCA US LLC,* No. CV 21-2908-GW (MAAx), 2021 WL 3733243, at *3 (C.D. Cal. Aug. 23, 2021) ("[M]ileage-offsets and vehicle-value reductions are not appropriate for consideration for amount-in-controversy purposes."), *with Quinones v. FCA US LLC*, No. 2:20-cv-06144-RGK (JPRx), 2020 WL 4437482, at *1 (C.D. Cal. July 31, 2020) ("Without information about [p]laintiff's use of the vehicle (such as the number of miles driven), the Court is left with considerable doubt as to the amount in controversy."); *see also Selinger v. Ford Motor Co.*, No. 2:22-cv-08883-SPG (KSx), 2023 WL 2813510, at *6–*8 (C.D. Cal. Apr. 5, 2023) (collecting cases).

Here, Defendant states the Manufacturer Suggested Retail Price ("MSRP") for vehicles similar to the subject vehicle is $35,340. Opp. at 3. This number encompasses the $30,280 suggested base price for the vehicle, plus an additional $5,060 in options and a "destination charge." Declaration of James Sheridan in Support of Defendant's Notice of Removal of Entire Case (Doc. # 1-3) at ¶ 7. Although Defendant did not provide a Retail Installment Sale Contract, the Court finds that the MSRP is a reasonable estimate of the total cash price for the vehicle. *See Mireles v. Gen. Motors LLC*, No. 5:23-cv-

01717-SSS (JPRx), 2023 WL 8320321, at *1, *3 n.3 (C.D. Cal. Nov. 30, 2023) (finding MSRP "to be a proper estimate of the value of the contract"). Moreover, the MSRP is a reasonable estimate of the actual price paid since the record does not show whether Plaintiffs have made installment payments or paid the full cash price of the vehicle. For purposes of this Motion, the Court will use the $30,280 base price as the starting point for calculating potential restitution.

Furthermore, this Court agrees with the courts in this district that have held that the actual price paid need not be reduced by the mileage offset in calculating the amount in controversy. In so holding, the Court notes that the mileage offset is an affirmative defense that Defendant may or may not raise at trial. *See Selinger*, 2023 WL 2813510, at *8. The mileage offset defense is "not automatically applied"; rather, it reduces Defendant's liability only if Defendant affirmatively and successfully raises the defense. *Id.* Considering such affirmative defenses in calculating the amount in controversy is improper at this stage because the Court is merely concerned with the "maximum recovery" that Plaintiffs can reasonably recover at the time of removal, *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (emphasis omitted), not the "likely liability" in light of a defense that may or may not be raised at a later stage of the proceedings. *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 (9th Cir. 2020) (holding that affirmative defenses are "irrelevant to determining the amount that is at stake in the litigation."); *see also Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010) ("[I]f a district court had to evaluate every possible defense that could reduce recovery below the jurisdictional amount the district court would essentially have to decide the merits of the case before it could determine if it had subject matter jurisdiction."); *In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*, No. 18-ml-02814 AB (FFMx), 2018 WL 5905942, at *4 (C.D. Cal. Sept. 10, 2018) ("[T]he amount in controversy is established by what the plaintiff demands, not by any reductions that a defendant might achieve through its defenses."). Requiring Defendant to submit evidence supporting a potential mileage offset defense

would, in this Court's view, improperly convert the amount-in-controversy analysis into a "prospective assessment of [D]efendant's liability." *See Lewis*, 627 F.3d at 400; *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) (explaining that the amount in controversy is the "amount at stake in the underlying litigation . . . whatever the likelihood that [plaintiff] will actually recover" that amount).

Accordingly, the Court finds that $30,280 is a reasonable estimate of the actual damages in dispute at this stage. The Court next considers the potential civil penalties.

### B. Civil Penalties

Under Cal. Civ. Code 1794(c), a consumer who purchased a defective good may receive a civil penalty of up to "two times the amount of actual damages" if the manufacturer's failure to comply with the Song-Beverly Act was "willful." Here, Plaintiffs allege that Defendant's conduct "was willful, in that Defendant [] and its representative were aware that they were unable to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of repair attempts, yet Defendant [] failed and refused to promptly replace the Vehicle or make restitution." Compl. ¶ 37. Therefore, according to Plaintiffs, they "are entitled to a civil penalty of two times Plaintiffs' actual damages." *Id.*

Like the mileage offset, courts "have varying views as to whether the maximum civil penalties should be considered when deciding the amount in controversy." *Verastegui v. Ford Motor Co.*, No. 19-cv-04806-BLF, 2020 WL 598516, at *3 (N.D. Cal. Feb. 7, 2020) (collecting cases). For example, some courts refuse to consider civil penalties unless the defendant submits evidence that the plaintiff would be entitled to them. *See Limon-Gonzalez v. Kia Motors Am., Inc.*, No. CV 20-4381-PA (JPRx), 2020 WL 3790838, at *3 (C.D. Cal. July 7, 2020) ("[S]imply assuming a civil penalty award is inconsistent with the principle that the defendant must provide evidence that it is more likely than not that the amount in controversy requirement is satisfied.") (citation modified). However, this Court finds that the maximum recoverable civil penalties should be considered "because that is what Plaintiff[s] put in controversy" in alleging

Defendant's willfulness. *Selinger*, 2023 WL 2813510, at *9 (quoting *Verastegui,* 2020 WL 598516, at *3); *see also Cox v. FCA US LLC*, Case No. 3:20-cv-03808-WHO, 2020 WL 5046103, at *2 (N.D. Cal. Aug. 24, 2020)); *Canesco v. Ford Motor Co.*, 570 F. Supp. 3d 872, 902–03 (S.D. Cal. 2021). Accordingly, the Court must assume Plaintiffs' allegations regarding Defendant's willfulness are true and calculate "the maximum recovery" Plaintiffs could reasonably recover based on those allegations, which, in this case, is two times Plaintiffs' potential actual damages. *See Kenneth Rothschild*, 199 F. Supp. 2d at 1001 (explaining that a court must "assume that the allegations of the complaint are true" in calculating the amount in controversy); *Arias*, 936 F.3d at 927 (explaining that "the amount in controversy reflects the maximum recovery the plaintiff could reasonably recover" at the time of removal) (emphasis omitted). Furthermore, Defendant should not have to "prove up its own liability" by submitting evidence of its willfulness to establish subject matter jurisdiction. *Selinger*, 2023 WL 2813510, at *9; *see also Canesco*, 570 F. Supp. 3d at 902 ("[T]his Court sides with the majority of courts and more recent cases, which find civil penalties appropriate for inclusion in the calculation of the amount in controversy without the defendant needing to 'prove a case against itself' with respect to liability for civil penalties.").

With the assumption that Plaintiffs' potential actual damages are $30,280, the amount in controversy includes potential civil penalties of $60,560. These numbers, added together, equal $90,840 in potential liability. This number exceeds the jurisdictional threshold of $75,000, and the amount in controversy requirement is therefore satisfied.

### C. Attorney Fees

Plaintiff's Complaint also seeks reasonable attorney fees as authorized by Cal. Civ. Code § 1794(d). *See* Compl. at Prayer for Relief. Prospective attorney fees are properly included in the court's assessment of the amount in controversy. *See Arias,* 936 F.3d at 922 ("[W]hen a statute or contract provides for the recovery of attorneys' fees, prospective attorney fees must be included in the assessment of the amount in

controversy."); *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648-49 (9th Cir. 2016) (noting the amount in controversy includes "damages (compensatory, punitive, or otherwise) . . . as well as attorneys' fees awarded under fee shifting statutes").

    Here, Defendant's Senior Staff Counsel submitted a declaration in support of Defendant's Notice of Removal, stating that he has been responsible for managing Defendant's breach of warranty litigation in California since October 2018 and that, in his experience, it is common for plaintiffs to seek attorney fees in excess of $50,000. *See* Doc. # 1-3 ¶¶ 1, 9. Defendant also cites multiple cases where similarly situated plaintiffs were awarded attorney fees exceeding $75,000. *Id.* ¶ 10, Exs. 1–2 (Doc. ## 1-5, 1-6.) Plaintiffs, on the other hand, argue that Defendant's estimate of attorney fees is speculative and without justification. Mot. at 21–24. The Court, however, has no difficulty finding that Defendant has shown it is more likely than not that Plaintiff's demand for attorney fees is sufficient to push the amount in controversy well over the jurisdictional threshold, to the extent it was not already met between actual damages and civil penalties.

## IV.   CONCLUSION

    For the foregoing reasons, the Motion is DENIED.

**IT IS SO ORDERED.**

DATED: 9/29/25

                                          *Cynthia Valenzuela*
                                       HON. CYNTHIA VALENZUELA
                                       UNITED STATES DISTRICT JUDGE